WEED *v.* CONSTRUCTION NEWS CO.

1. CONTRACTS—ACCEPTANCE.
   Where plaintiff received an offer of employment and replied that he wanted more time, and the offer was subsequently modified, after which he accepted the original proposition, by letter, the first reply constituted a refusal of the offer.

2. SAME—EVIDENCE.
   Plaintiff's statement that he orally accepted the proposal did not tend to show an acceptance, in the light of subsequent letters.

3. SAME—CORPORATIONS—OFFICERS.
   Authority is not shown in the president of the defendant corporation to make an agreement for permanent employment of plaintiff as manager of a corporation to be subsequently purchased, at a stated salary and a further consideration of half the stock of the corporation, without evidence of some action on the part of the defendant.

Error to Wayne; Donovan, J. Submitted January 18, 1910. (Docket No. 85.) Decided April 1, 1910.

Assumpsit by Guy C. Weed against the Construction News Company for breach of a contract of employment. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

*Bowen, Douglas, Whiting & Eaman* (*Herbert V. Barbour*, of counsel), for appellant.

*James & Kilpatrick*, for appellee.

MONTGOMERY, C. J. This action was brought to recover damages for an alleged breach of contract. The defendant company was engaged in publishing "The Construction News," "The Contractor," and "The Cement Era." The plaintiff had been employed by this company to solicit advertising, and in April, 1906, the

president of the defendant company, E. H. Baumgartner, stated to plaintiff that he intended to become the purchaser of a paper called "Motor Way," then being published by the Technical Press of America, a corporation. The proposition made to plaintiff by Baumgartner was that he would purchase a controlling interest in this corporation, the Technical Press of America, and that plaintiff should then take over one-half of the stock so purchased, and that plaintiff should have principal charge of the conduct of the business at a salary of $40 per week; the agreement being that the plaintiff was to share the losses, if any, which were incurred while establishing the business of the paper "Motor Way." This is plaintiff's version of the contract.

The record shows, however, that correspondence passed between the parties relating to the contract, and a letter signed "E. H. Baumgartner, President," on the letter head of the Construction News, and dated April 26, 1907, states in substance the contract as stated. The reply of plaintiff to this letter was as follows:

"I would like to have the opportunity of getting some of the business in this territory that has been promised me, and, as this is only a reasonable request, I trust it can be done. I find however to get my property ready for the market I shall have to spend several hundred dollars on it and am dependent on my earning ability for this money. Just how I am going to do this and put up money if necessary on Motor Way is a question I have not as yet solved.  *  *  *

"I want an opportunity for 4 months yet to make some money, the more the better so I can clean matters up here. If this can be arranged I am satisfied to accept the deal as outlined."

On the 3d of May Mr. Baumgartner wrote another letter, which included this language:

"Beginning next week, I want you to work on a salary under the arrangement outlined in my letter to you recently. I have also decided to have you come on to Chicago, as it is difficult to perfect our matters by mail.

In order to economize on your time, I wish you would make several towns en route," etc.

On the 25th of May, Baumgartner again wrote plaintiff, stating:

"I think if we allow you $25 per week and $3 per day trav. expenses and railroad fare it should be sufficient. I am prepared to go ahead on that basis beginning June 1, '07. We will fix up the other details some time later."

On the 31st of May, plaintiff wrote Baumgartner as follows:

"I am ready to comply with the agreement as to Motor Way and will be open for business to-morrow morning June 1, '07. This is in acceptance of your recent proposition of $\frac{1}{2}$ of 51 per cent. of the stock and the active management at $40.00 per week it being understood that I shall pay one half of the deficit if any until Motor Way becomes self-supporting."

It will be noted that nearly two months had elapsed since the proposition of April 26th, and that the letter in response thereto of April 30th would in law amount to a refusal of the offer except as the same was later renewed, and that in the meantime, and on the 25th of May, Baumgartner had modified his proposition by suggesting a price of $25 per week and $3 per day for traveling expenses in place of $40 per week, and suggesting that the details should be arranged later on.

Notwithstanding this, the plaintiff insists that there was an oral agreement by which he became interested according to these terms. On cross-examination, witness was asked:

" Q. What date did you say was accepted 'The Motor Way' contract?

"A. Accepted verbally on April 27, 1907.

" Q. When did you accept it in writing, if ever?

"A. By this letter, which was last April, the 28th.

" Q. That you say was paid on that contract?

"A. It was also practically accepted on the 30th. You must remember in a long connection with the company, there were little minor details that came up every once in

a while, and they were always considered as part of the contract."

We think this falls short of showing an acceptance of this contract.

We think, also, that there is an insurmountable obstacle to a recovery in the case in the failure of the plaintiff to show any authority on the part of Baumgartner to bind the Construction News Company by such a contract as is alleged by the plaintiff. This contract involved an agreement between the plaintiff and Baumgartner, alleged to be representing the Construction News Company, to go out and purchase a controlling interest in the stock of another corporation. There was not only no proof of the authority on the part of Baumgartner to do this, but Baumgartner was called as a witness for plaintiff, and distinctly denied such authority. Plaintiff himself testified as follows:

"*Q.* Was the Construction News Company to have anything to do with the stock?
"*A.* That I could not tell.
"*Q.* You are not absolutely certain of that?
"*A.* No, sir."

Mr. Baumgartner testifies that the defendant company had nothing whatever to do with the purchase of the stock of the Motor Way.

We think the court erred in submitting the question of authority to the jury, and for the reasons stated the judgment will be reversed, and a new trial ordered.

OSTRANDER, HOOKER, MOORE, and STONE, JJ., concurred.